**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1423
_____

ADOLFO ARIAS-MENDOZA,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(A206-505-608)
Immigration Judge:  Rosalind K. Malloy
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 10, 2023
_____

Before:  JORDAN, PHIPPS, and ROTH, *Circuit Judges*.

(Filed: April 7, 2023)
_____

OPINION[*]
_____

PHIPPS, *Circuit Judge*.

In his petition, Adolfo Arias-Mendoza, a native and citizen of El Salvador, who

witnessed a homicide in that country in 2013, raises two challenges to his removal order.

First, he argues that the Board of Immigration Appeals erred in rejecting his claim for

statutory withholding of removal, which he premised on his status as a witness to a

_____
[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

homicide.  Second, he claims that he was denied due process when the Immigration Judge denied him a continuance for his merits hearing after his attorney withdrew. Neither of those arguments has merit, and for that reason, we will deny the petition.

**FACTUAL BACKGROUND (FROM THE ADMINISTRATIVE RECORD)**

As then-20-year-old Arias-Mendoza was walking home from work on March 12, 2013, in El Salvador, he witnessed a homicide.  On the street in front of him, two men, whom he believed were members of the MS18 gang from their tattoos, shot and killed a third man.  Arias-Mendoza immediately fled the scene, and the men shot at him as he ran away.  He could not make out their faces, and he did not know their names, but still, in fear of retaliation, he did not report the crime to the police.  He told only his family, begging them not to tell anyone else.  Despite his silence, a few days later, an anonymous note left at his home threatened to kill him and his family if he did not leave the country. On March 25, he left El Salvador.

About a month later, on April 22, 2013, Arias-Mendoza was apprehended after crossing the Rio Grande on a raft at the southern border, near Hidalgo, Texas.  Despite not mentioning any fear of gang violence in his initial sworn statement to a Border Patrol agent, Arias-Mendoza, through later-retained counsel, requested a credible fear interview. He had such an interview, and after his release from custody, he traveled to York, Pennsylvania, where he found work.  In June 2015, through different counsel, Arias-Mendoza moved to transfer his case from Texas to Pennsylvania.  As part of that motion, he conceded removability.

In August 2015, the Immigration Court in the transferred venue, Philadelphia, Pennsylvania, held a master calendar hearing for his case.  Through counsel, Arias-Mendoza indicated that he did not want to expedite his case and that he wished to apply

2

for relief from removal, which he did later that day, seeking asylum and withholding. In response, the Immigration Judge set a merits hearing for about a year-and-a-half later.

The purpose of that merits hearing on May 1, 2017, was to resolve both requests for relief. Resolving the asylum request, however, took considerable time. Ultimately, the Immigration Judge denied the asylum request as untimely – it was filed more than a year after Arias-Mendoza entered the country. *See* 8 U.S.C. § 1158(a)(2)(B) (setting a one-year time limit for asylum claims). The Immigration Judge did not address the withholding claim and instead continued the hearing to the next available date, which was about a year-and-a-half later.

That second merits hearing in February 2019 did not begin with the withholding claim; instead, it commenced with a motion to withdraw by Arias-Mendoza's counsel. Recognizing that she could not compel continued representation, the Immigration Judge granted that motion. Also, the Immigration Judge indicated that Arias-Mendoza should have been prepared to go forward with his withholding claim at the prior merits hearing, and noticed that her next open hearing date was in 2022. So instead of granting yet another continuance, the Immigration Judge held the hearing as scheduled.

At the hearing, Arias-Mendoza proceeded without counsel. The Immigration Judge questioned him, thus affording him an opportunity to "explain to the Court and to the Government why he fears returning to El Salvador." Hr'g Tr. 85:21 (AR156). After considering his testimony, the Immigration Judge denied Arias-Mendoza's request for statutory withholding of removal. The judge explained that witnesses to homicides by gang members do not constitute a cognizable particular social group and that Arias-Mendoza did not establish a clear probability that his life or freedom would be threatened on that basis.

3

After retaining new counsel, Arias-Mendoza filed an administrative appeal with the BIA. He challenged the denial of asylum and withholding of removal. Also, Arias-Mendoza claimed the Immigration Judge, by not *sua sponte* granting a continuance after granting the withdrawal motion, violated his due process right to a fair proceeding. The BIA rejected each argument, and Arias-Mendoza timely petitioned this Court for review of that order. *See* 8 U.S.C. § 1252(b)(1), (4).

## DISCUSSION

### I.  Arias-Mendoza Does Not Merit Withholding from Removal.

In his petition, Arias-Mendoza challenges the denial of statutory withholding of removal.[1] Through that relief, he would be allowed to remain and work in the United States until another country would agree to accept him or the conditions in El Salvador improve. *See* 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 274a.12(a)(10); *id.* § 208.24(b)(1). If the undocumented immigrant is a member of a "particular social group," he may, upon fulfilling other requirements, qualify for such withholding. 8 U.S.C. § 1231(b)(3); *see S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 539–40 (3d Cir. 2018); *In re M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014). Such a group is, among other things, socially distinct – it receives recognition by the public at large. *See S.E.R.L.*, 894 F.3d at 551.

For a witness to a crime to satisfy the social-distinction requirement, his or her status as a witness must receive publicity. That can occur through in-court testimony, *see*

---

[1] On occasion in his briefing for this petition, Arias-Mendoza frames the relief he requested more generally, to include asylum and, obliquely, withholding under the Convention Against Torture. Even supposing that those statements meet the minimal threshold for an argument, they go nowhere. Arias-Mendoza does not dispute that his asylum claim is time-barred. Nor does he contest the Immigration Judge's denial of his claim under the Convention Against Torture (which the BIA deemed waived). Accordingly, his present challenge is only to the denial of withholding of removal. *See Garcia v. Att'y Gen.*, 665 F.3d 496, 502 (3d Cir. 2011) (deeming arguments not raised in opening brief waived).

4

*Garcia v. Att'y Gen.*, 665 F.3d 496, 504 (3d Cir. 2011), or publicly-known assistance to law enforcement, *see Guzman Orellana v. Att'y Gen.*, 956 F.3d 171, 179–80 (3d Cir. 2020). But without publicity, a witness is "indistinguishable from those in the general public whom a criminal gang might otherwise suspect as having informed on it," and thus is not a member of a particular social group. *Radiowala v. Att'y Gen.*, 930 F.3d 577, 584 (3d Cir. 2019) (holding confidential informants are not a socially distinct group).

For Arias-Mendoza to succeed on highly deferential substantial evidence review, the record must compel the conclusion that he received publicity as a witness to crime. *See* 8 U.S.C. § 1252(b)(4)(B); *Alexander-Mendoza v. Att'y Gen.*, 55 F.4th 197, 205 (3d Cir. 2022). It does not. In the thirteen days in which he remained in El Salvador following the homicide, he did not publicly report the crime to anyone. He told only his family, in private, and he exhorted them not to tell anyone else. Similarly, Arias-Mendoza did not so much as suggest that, in that thirteen-day period, a public trial was held on the homicide, much less that he publicly testified about the homicide. *Cf. Radiowala*, 930 F.3d at 584 (denying asylum and withholding in situation in which the "record [was] devoid of evidence that [the petitioner] actually testified against anyone"). To the contrary, by his own testimony, he did not know the names of the killers, and he could not identify their faces (though he did see enough of their tattoos to associate them with the MS18 gang). Thus, the record does not compel the conclusion that Arias-Mendoza received publicity as a witness to a crime.

**II. Arias-Mendoza's Due Process Rights Were Not Violated.**

Arias-Mendoza also argues that by not continuing his second merits hearing and leaving him to proceed *pro se*, the Immigration Judge violated due process. Such a claim requires proof of (i) an inability to meaningfully present a case (ii) that results in

substantial prejudice. *See Serrano-Alberto v. Att'y Gen.*, 859 F.3d 208, 213 (3d Cir. 2017) (quoting *Fadiga v. Att'y Gen.*, 488 F.3d 142, 155 (3d Cir. 2007)); *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965))). On *de novo* review for this constitutional challenge, *see Hernandez Garmendia v. Att'y Gen.*, 28 F.4th 476, 482 (3d Cir. 2022), neither element is met.

Having to testify to his experience and fears about returning to El Salvador without counsel did not deny Arias-Mendoza a fair hearing. *See Ponce-Leiva v. Ashcroft*, 331 F.3d 369, 376 (3d Cir. 2003) ("[T]he mere inability to obtain counsel does not constitute a violation of due process." (quoting *United States v. Torres-Sanchez*, 68 F.3d 227, 231 (8th Cir. 1995))). Upon examination by the Immigration Judge, *see* 8 U.S.C. § 1229a(b)(1), he was able to testify to those topics. If anything, Arias-Mendoza argues that the questioning was too rigorous, but the Immigration Judge has discretion to make inquiries of a witness. *See Muhanna v. Gonzales*, 399 F.3d 582, 587 (3d Cir. 2005) (noting the "broad" discretion Immigration Judges have in conducting hearings, including in examining witnesses). And an Immigration Judge's diligent, evenhanded examination of a *pro se* party "is to be commended, not condemned." *Aguilar-Solis v. INS*, 168 F.3d 565, 569 (1st Cir. 1999); *see also Abdulrahman v. Ashcroft*, 330 F.3d 587, 596 (3d Cir. 2003).

Nor does Arias-Mendoza identify any prejudice resulting from the lack of a continuance. He does not explain how, with either more time or with representation by counsel, he would have established the fact that his status as a witness to a crime received publicity. Indeed, to do so would have jeopardized his own credibility: it would have

contradicted his earlier statements that he was too frightened to report the crime to the authorities and had urged his family not to tell anyone about the event.

*** 

For the foregoing reasons, we will deny the petition.